NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Bankruptcy Case No. 07-16649 |
| Erez Health Care Realty Co., L.L.C. | : | Chapter 11 |
| Debtor | : | |
| Erez Health Care Realty Co., L.L.C., | : | |
| Plaintiff | : | |
| vs. | : | Adversary No. 09-1738 |
| Township of Toms River | : | |
| | : | **MEMORANDUM OPINION** |
| Defendant | : | Trial Date:  September 1, 2011 |

**APPEARANCES**

Attorney for Plaintiff

Andrew Kelly, Esquire
The Kelly Firm, P.C.
1011 Highway 71, Suite 200
Spring Lake, New Jersey 07762

Attorney for Defendant

Kenneth B. Fitzsimmons, Esquire
Township of Toms River
Division of Law
33 Washington Street
Toms River, New Jersey 08753

Procedural background

Erez Health Care Realty Co., L.L.C. ("Erez") filed a Complaint for the Determination of Tax Liability Pursuant to 11 U.S.C. § 505.  In Count One of the Complaint, Erez contests the October 1, 2008 assessment and demands judgment reducing the assessment to the "correct" market value.  In Count Two, Erez contests the assessment of the Property for the years 2006 and 2007 and demands that the assessment be reduced.  The Township of Toms River ("Toms River") filed a counterclaim seeking an increase in the assessment of the Property.  In its post-trial submissions, Erez requests that its Complaint be amended to include the 2010 tax year.

The court tried the matter on September 1, 2011 and reserved decision.  The parties filed their post-trial submissions on September 23, 2011.   The court now issues its findings of fact and conclusions of law.

Background

Erez is a New Jersey limited liability corporation that owns the property located at Lot 2, Block 159 on the official map of the Township of Toms River, commonly known as 1001 Route 70, Dover Township, New Jersey ("Property").  The site is 4.44 acres and is improved with a 48,550 square foot building.  The Property is used as residential health care facility known as Dover Woods Residential Health Care Facility.  It is a state licensed facility with 236 beds, of which 200 are state-pay and 36 are private-pay.

Erez purchased the Property in August, 1999.  Based on a revaluation Toms River undertook in 1993, the prior assessed value of the Property was $2,194,000.  There was a fire at the Property in 2005 that severely disrupted operations.  Erez received a Notice of Proposed Assessed Valuation from Certified Valuations, Inc. dated January 27, 2009 ("Notice").  According to the Notice, Toms River had been ordered by the Ocean County Board of Taxation

and the New Jersey Division of Taxation to revalue all property within the Township in 2005. As a result of the changes in the real estate market that began in the Spring of 2007, the date of the revaluation was changed to October 1, 2008 to become effective for the 2009 tax year. The Notice stated that Certified Valuations, Inc. had determined that the market value of the Property as of October 1, 2008 was $9,931,700 based on sales during the past 12 months,. ("municipal tax assessment").

Discussion

Section 505 of the Bankruptcy Code grants bankruptcy judges broad authority to determine the amount or legality of a debtor's tax liability.[1] A bankruptcy court adjudicating a tax claim must apply the burden of proof rubric normally applied under the governing tax law.[2] The governing tax law in this case is New Jersey. Under New Jersey law, a municipal tax assessment is ordinarily clothed with a presumption of correctness.[3] That normal presumption is inapplicable here because Toms River is no longer relying on the $9.9M assessment[4], but rather asks the court to adopt the values in the Mancini report.[5]

The court looks to New Jersey law to determine the proper allocation of the burdens of proof in this matter. It has been noted that "[t]he so-called 'presumption' ha[s] no artificial probative force once substantial evidence to the contrary [has been] adduced."[6] The New Jersey Supreme Court has held that "once sufficient competent evidence is produced and the presumption overcome, the matter is not thereby concluded in favor of the complaining party.

---

[1] In re Venture Stores, Inc., 54 F. App'x 721 (3d Cir. 2002); In re Custom Distribution Services, Inc., 224 F.3d 235 (3d Cir. 2000).
[2] Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15 (2000)
[3] Schimpf v. Little Egg Harbor Tp., 14 N.J. Tax 338 (1994)
[4] The Mancini appraisal values the Property at $5,050,000 as of October 1, 2008, which is more than $4M less than the municipal tax assessment. Such an enormous discrepancy strips the municipal tax assessment of any presumption of correctness.
[5] *Toms River Post-Trial Brief* at 8
[6] Samuel Hird & Sons, Inc. v. City of Garfield, 87 N.J. Super. 65, 74 (App. Div. 1965)

The court must then turn to a consideration of the evidence adduced on behalf of both parties and conclude the matter based on a fair preponderance of the evidence."[7]

The New Jersey Constitution provides that real property taxes are to be levied by municipalities on an ad valorem basis "according to the same standard of value."[8] The New Jersey Supreme Court has noted that: "Equality of treatment in sharing the duty to pay real estate taxes is a constitutional right."[9] Consequently, taxpayers are endowed with the right to appeal real property taxes that they believe do not meet the constitutionally-mandated standard.[10]

New Jersey law provides that real estate taxes must be assessed by October 1 of the preceding year upon the "full and fair value of each parcel of real property situate in the taxing district at such price as ... it would sell for at a fair and bona fide sale by private contract...."[11] New Jersey courts have held that "full and fair value," as used in § 54:4 23, is the equivalent of true value or market value.[12] The concept of true value has been expressed in terms of the price that could be obtained for the property at a fair sale between a willing buyer and a willing seller.[13] Further, "market value" is a synonym for "true value" or "full and fair value", and means the most probable price in cash, or the cash equivalent, for which the appraised property will sell in a competitive market under all conditions requisite to a fair sale, with the buyer and

---

[7] Ford Motor Co. v. Township of Edison, 127 N.J. 290, 313 (1992)
[8] N.J. Const. Art. VII, § 1, 1[a]
[9] Murnick v. City of Asbury Park, 95 N.J. 452, 458 (1984)
[10] F.M.C. Stores Co. v. Borough of Morris Plains, 195 N.J. Super. 373, 381 (1984), aff'd, 100 N.J. 418 (1985).
[11] N.J.S.A. § 54:4 23
[12] Willingboro Chrysler/Plymouth, Inc. v. Edgewater Park Twp., 6 N.J. Tax 168, 176 (1983)
[13] Pantasote Co. v. City of Passaic, 100 N.J. 408 (1985) ("true value" is the value property would bring at fair, bona fide, and uncoerced private sale.")

4

seller each acting prudently, knowledgeably, and for self-interest, and assuming that neither is under undue duress.[14]

With that legal framework in mind, the court turns to the evidence that was presented at trial. Erez presented the appraisal report of Gagliano & Company[15] and the testimony of Robert Gagliano. Toms River presented the appraisal report of Henry J. Mancini & Associates[16] and the testimony of Henry Mancini. The parties stipulated to the admissibility of the respective expert reports and the trial commenced with the cross-examination of the experts.

Both experts concluded that the highest and best use of the Property was its current use as a state licensed residential healthcare facility. Despite that, the experts reached widely divergent conclusions as to value. The chief difference between the two expert reports was in the choice of valuation method. The Gagliano report primarily relied on the Income Capitalization Approach with values tested secondarily against the Sales Comparison Approach. That method yielded values from a low of $1.52M (Oct. 1, 2006) to a high of $1.77M (Oct. 1, 2008). The Mancini report primarily employed the Cost Approach, which yielded values in the range of $4.7M (Oct. 1, 2009) to $5.4M (Oct. 1, 2006).

Based on all of the evidence adduced at trial, the court concludes that the methodology employed in the Gagliano report resulted in a more accurate determination of true value. The weaknesses in the Mancini report became readily apparent on cross-examination. For example, when Erez's counsel asked Mr. Mancini why he used an 85% occupancy rate when the historical data did not support such a high number, he responded that he arrived at it by comparing other senior housing and independent living facilities. When pressed as to whether that was appropriate, Mr. Mancini conceded that it was like comparing apples to oranges. Another

---

[14] Petrizzo v. Borough of Edgewater, 2 N.J. Tax 197, 200 (1981)
[15] Ex. P-1
[16] Ex. D-1

weakness in the testimony was that Mr. Mancini could not provide a consistent and convincing explanation of which specific expenses were included in the 80% expense ratio used in his report. Mr. Mancini also admitted that he did not contact the principal of the Debtor or the Debtor's accountant to verify any of the expense data he used. Additionally, Mr. Mancini was unable to justify certain of the methodologies used in his report. When testifying about whether it is appropriate to make an expense adjustment for reserves for "big ticket" items such as a roof or HVAC system, Mr. Mancini stated those are not things that a buyer would typically consider as part of market price. The court can take judicial notice that a buyer in a residential transaction would consider the age of the roof or the furnace before making an offer; yet Mr. Mancini offered no valid explanation for why a buyer in a commercial context would not do the same. On the whole, Mr. Mancini's testimony undercut the reliability of his appraisal. His explanations for why he chose his valuation method and how he implemented it lacked probative force.

By contrast, Mr. Gagliano persuasively testified not only as to why he chose the valuation method he did, but also why he found the other two methods ill-suited to the task. Mr. Gagliano explained that he found the Sales Comparison Approach a poor fit to determine true value for the Property because of the dearth of even reasonably similar properties. It is axiomatic that the fewer adjustments that need to be made to a comparable property the more meaningful the comparison. The Property has 236 beds whereas all of the recent sales of residential health care facilities were smaller facilities by orders of magnitude. Mr. Gagliano testified that he rejected the Cost Approach because that method is typically used for very old or very new properties. This Property is middle aged making calculating depreciation more difficult. More importantly, the Cost Approach relied in large part on the cost per square foot that a buyer might pay to

reconstruct the building and from the evidence adduced at trial it is abundantly clear that this facility would never be rebuilt.

The court finds that the manner in which the Gagliano report applies the Income Capitalization Approach results in the more realistic "true value." Although the Mancini report used the same approach as a supplement to the Cost Approach, the way it was applied resulted in a skewed conclusion as to the true value of the property. Neither the report itself, nor Mr. Mancini's testimony, persuades the court that a typically motivated buyer would pay over $5 million for the Property as of October 1, 2008. What the Mancini report fails to properly account for is that the Property, in layman's terms, is a white elephant. The Property's layout is highly undesirable because it is built in a dormitory style with a shared bathroom. Both experts agreed that no one would build such a facility now and both testified that they are unaware of another facility in that style having been built in the last 25 years. The undesirable layout also makes it cost prohibitive to convert the Property into apartments or another use, thus further lowering its true value. Finally, the court finds that the Gagliano report gave proper consideration to the economic impact of the fire that occurred at the property in 2005.

Toms River asserts in its post-trial brief that in the absence of evidence of either economic rent or comparable sales, the Cost Approach is the only proper valuation method. Toms River argues that the approach used by Erez's expert was rejected by the Tax Court in Twin Oaks as an inaccurate gauge of market value and thus the Gagliano report should be rejected.[17] The court disagrees with that reading of the Twin Oaks opinion. Crucial to the court's decision in that case to disregard the income approach was the fact that the property at

---

[17] Twin Oaks Assoc. Health Resources of Morristown, Inc. v. Twp. Of Morristown, 9 N.J. Tax 386 (Tax Ct. 1987), *aff'd*, 11 N.J. Tax (App. Div. 1989).

issue was a nursing home that accepted Medicaid patients.[18]  As part of the Medicaid rate is a 90% reimbursement for real estate taxes.  There was no evidence presented in this case that Erez receives a reimbursement for real estate taxes.  Therefore, the court finds Twin Oaks inapplicable to this situation.

## Conclusion

The court adopts the valuations contained in the Gagliano report for the years 2006 – 2010.  The court finds in favor of Erez on both counts of the Complaint.  Counsel for Erez should submit a form of order in accordance with this opinion.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge

Dated:  October 28, 2011

---

[18] Id. at 395